# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEREMY FRANKLIN THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-CV-0450-CVE-TLW |
| TULSA POLICE DEPARTMENT; TYLER TURNBOUGH, | ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff Jeremy Franklin Thomas, a state prisoner appearing pro se. Before the Court is the motion for summary judgement (Dkt. # 22) filed by Defendant Tyler Turnbough, a City of Tulsa Police Officer.[1] Turnbough also filed a Special Report (Dkt. # 17) as directed by the Court. Thomas filed a response to the motion (Dkt. # 24). For the reasons discussed below, the Court finds that the motion for summary judgment shall be granted as to Thomas's Fourth Amendment claim of excessive use of force.

### BACKGROUND

In the "Nature of Case" section of his complaint (Dkt. # 1), Thomas provides the following statement:

> Traffic stop gone very bad. "Excessive force" stabbed 18 times by Officer. I had no drugs or weapons. See Witness Dr. Michael Charles, St. John Medical Center 1923 S. Utica Ave. Tulsa Ok. 74104.

See id. at 2. Based on those and other facts alleged in an additional handwritten page, id. at 3, Thomas identifies three (3) causes of action, as follows:

---

[1] Defendant Tulsa Police Department was dismissed in a prior Order. See Dkt. # 3.

| | |
|---|---|
| Count 1: | First Amendment, Eighth, Fourteenth, Fifteenth, & Ninth.<br>I ask the officer what the problem was & Officer became very hostile & aggressive. Sprayed me with mase [sic]. |
| Count 2: | Eighth. I was charged with assault for resisting & stabbed 15 to 18 times by Officer Turnbough & sent to jail with overly high bond.<br>I was stabbed in my face, three stab wounds in my ear, stabbed twice in my head, 3 to 4 times in my neck, two more times in my back & also in the middle of my chest 1 ½ [ ] from heart. |
| Count 3: | 14th Amendment.<br>I feel I was treated very unfair by Mr. Turnbough. As a citizen, I wanted to file charges on the officer but went on death [sic] ear. I was not helped in the matter. |

Id. at 2, 4. In his request for relief, Thomas asks for "2 million for 'mental anguish,' 2 million for 'excessive force,' 2 million for 'pain & suffering,' 2 million for 'punitive damages' & violation of my constitutional rights." Id. at 4.

In a prior Opinion and Order (Dkt. # 20), the Court granted Turnbough's motion to dismiss as to Plaintiff's claims raised under the First, Eighth, Ninth, Fourteenth, and Fifteenth Amendments. The Court also liberally construed the complaint as stating a claim of excessive use of force under the Fourth Amendment and directed Turnbough to file a motion for summary judgment with respect to the Fourth Amendment claim. Id. On January 29, 2015, Turnbough filed his motion for summary judgment (Dkt. # 22). On March 23, 2015, Plaintiff filed a response (Dkt. # 24).

*ANALYSIS*

**A. Summary judgment standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co. of America, 50 F.3d 793, 796 (10th Cir. 1995)). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994). When "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Johnson v. Roberts, 410 F. App'x 104, 106-07 (10th Cir. 2010) (unpublished)[2]; see also Fed. R. Civ. P. 56(e)(2). In responding "to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988) (citing Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988)).

---

[2]This unpublished opinion is cited for its persuasive value. See 10th Cir. R. 32.1(A).

**B. Standard governing use of force under the Fourth Amendment**

In light of Thomas's pro se status, the Court has liberally construed the complaint, see Dkt. # 20, as stating a claim for violation of Thomas's Fourth Amendment right to be free from unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 388 (1989); Terry v. Ohio, 392 U.S. 1, 8 (1968); Estate of Booker v. Gomez, 745 F.3d 405, 418-19 (10th Cir. 2014). The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> Determining whether force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake . . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . . The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Graham, 490 U.S. at 396 (alterations, citations, and quotations omitted). Thus, to determine whether a use of force is excessive under the Fourteenth Amendment a court considers three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." Booker, 745 F.3d at 423 (citing Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1243 (10th Cir. 2003)). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force necessary in a particular situation.'"

4

Blossom v. Yarbrough, 429 F.3d 963, 967 (10th Cir. 2005) (quoting Graham, 490 U.S. at 396-97). To evaluate excessive force, the Court views the facts from the perspective of the officer. See Graham, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. Id. In evaluating an excessive force claim, courts are to consider the totality of the circumstances. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Sevier v. City of Lawrence, 60 F.3d 695, 699 (10th Cir. 1995)). "[D]eadly force [is] justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others." Id. at 415.

**C. Thomas's claim of excessive use of force**

Thomas alleges that Turnbough used excessive force during the course of Thomas's arrest when Turnbough sprayed him with mace "for no reason" and stabbed him eighteen (18) times when Turnbough "had no reason to try and kill me." See Dkt. # 1 at 3. In his motion for summary judgment, Turnbough argues that his use of force was reasonable. See Dkt. # 22 at 11. In the Special Report (Dkt. # 17), Turnbough presents the following evidence in support of his argument: Tulsa Police Department Incident Reports (Dkt. ## 17-1, 17-2, 17-3); a transcript of Turnbough's recorded statement given three (3) days after the incident (Dkt. # 17-4); the transcripts of statements provided by Ioder "Butch" Fisher, Jr. (Fisher), a witness to part of the incident, and Kathy Terrell (Terrell), Thomas's aunt (Dkt. ## 17-5, 17-6); a record from the Oklahoma Department of Corrections (DOC) (Dkt. # 17-7); a letter from the Osage County District Attorney addressed to Tulsa Police Department (TPD) Chief Jordan (Dkt. # 17-8); and the state court docket sheet from Thomas's criminal case, Osage County District Court, Case No. CF-2013-041 (Dkt. # 17-9).

Turnbough provides much of the same evidence in support of his motion for summary judgment. See Dkt. # 22.

In response to Turnbough's motion for summary judgment, Thomas provides no evidence and continues to rely on mere allegations. See Dkt. # 24. He characterizes Turnbough's evidence as "nonsence [sic]" and "silly," and alleges that Turnbough "was trying to kill me on that dark street," and that he "complied and . . . still got stabbed 18 times." Id. at 1, 2. Thomas admits he has a "drug problem" but claims that he is "non-violent."[3] Id. at 3. Thomas asserts that Turnbough's statements during his interview demonstrate that "he's fabricating his story," id., and that "Officer Turnbough has no proof that I ever held or had his gun," id. at 4.

Nothing provided by Thomas controverts the summary judgment evidence provided by Turnbough. That evidence demonstrates the following: during the early morning hours of January 13, 2013, Turnbough, a City of Tulsa Police Officer, attempted to stop a vehicle driven by Thomas for failure to signal a left turn and because the vehicle had no tail light. See Dkt. # 22-2 at 1. However, Thomas accelerated and attempted to elude Turnbough. Id. at 2. After running several stop signs, Thomas pulled into the driveway of Terrell's residence, located at 632 North Union Place, id., in the city limits of Tulsa, Oklahoma. Both Thomas and Turnbough exited their vehicles, and Turnbough pulled his service weapon and ordered Thomas to the ground. Id. at 3. At first, Thomas appeared to comply. But then Turnbough claims that Thomas started a "series of actions"

---

[3]Records provided by Turnbough, including the DOC record of Thomas's prior convictions (Dkt. # 17-7) and the statements of his aunt, Kathy Terrell (Dkt. # 17-6), confirm that Thomas had a history of drug problems and had been using drugs prior to the incident with Turnbough. Those same records also demonstrate that Thomas had a history of violent conduct. See Dkt. # 17-7 (documenting a 2008 prior conviction for Assault & Battery Upon a Detention Officer), and Dkt. # 17-6 (documenting that Thomas threatened Terrell causing her to be afraid of him). Thus, those records contradict Thomas's claims that he is "non-violent." See Dkt. # 24 at 3.

that caused Turnbough to believe Thomas had been using the drug Phencyclidine (PCP) and that he was going to lunge at Turnbough. Id. For those reasons, Turnbough sprayed Thomas with pepper spray, but the pepper spray "had zero effect." Id. Thomas jumped up and ran to the house across the street, 627 North Union Place. Id. at 4. Turnbough gave chase and both men ended up on the front porch of the house. Id. Thomas banged on the door of the house, then turned to face Turnbough and assumed a "fighting stance." Id. Thomas took a swing at Turnbough but missed. Id. Turnbough grabbed Thomas and tried to throw him away from the porch, but Thomas wrapped his arms around Turnbough and grabbed the handle of Turnbough's gun. Id. A scuffle ensued and the two continued fighting, but Turnbough was unable to get Thomas "off of my gun." Id. at 6. Thomas pinned Turnbough against the front door of the house. In an effort to free himself and to prevent Thomas from getting his gun, Turnbough "yanked" Thomas's earring out of his ear and gouged him in the eye, but those actions had no effect on Thomas. Id. Turnbough then "transitioned to a knife that I keep on my belt." Id. at 7. Turnbough estimated that he stabbed Thomas 10-12 times before Thomas finally fell to the ground. Id. at 8. Turnbough stated that, during his confrontation with Thomas on the porch, Thomas "never let go of my gun at any point." Id.

     Significantly, evidence in the record corroborates Turnbough's version of the incident. During the scuffle, the residents of the house at 627 North Union Place, Fisher and his wife, were inside. Hearing the commotion, Fisher demanded to know who was on his porch. See Dkt. # 22-3 at 2. Thomas identified himself as "Kathy's nephew" and said "they [are] tryin [sic] to kill me." Id. Fisher heard Turnbough identify himself as a Tulsa police officer and say "let my gun go . . at least a couple" of times. Id. at 4. Fisher also stated he could see through a window that Thomas had Turnbough's back pinned up against the front door of the house. Id. at 3-4.

7

Terrell, Thomas's aunt, lived at 632 North Union Place. She also gave a statement to police. See Dkt. # 17-6. She said that Thomas had been to her house earlier in the day preceding the incident but that she wouldn't let him in because he was "threatening us . . . we were afraid." Id. at 2. She also confirmed that Thomas had a drug problem and that he took PCP. Id. at 3.

In addition, the record contains a letter, dated January 23, 2013, from Rex Duncan, District Attorney for Osage and Pawnee Counties, to Chief Chuck Jordan of the Tulsa Police Department. (Dkt. # 22-5). Duncan states that "[a]fter reviewing the documents and digital evidence it is clear Officer Tyler Turnbough was justified in using deadly force to defend himself and prevent Jeremy Thomas from getting his service weapon." Id.

Based on the altercation with Turnbough, Thomas was charged in Osage County District Court, Case No. CF-2013-041, with Assault & Battery on a Police Officer (Count 1), Attempt to Elude Police Officer (Count 2), Failure to Signal on Turning (Count 3), Failure to Pay All Taxes Due State (Count 4), Driving Without a Drivers Licence (Count 5), and Defective Vehicle (Count 6). (Dkt. # 22-6 at 1). On August 30, 2013, Thomas entered pleas of guilty to all charges. The trial judge accepted his pleas and found him guilty. Thomas was sentenced to five (5) years imprisonment and fined $500 on Count 1, one (1) year in the Osage County Jail and fined $500 on Count 2, with the sentences ordered to be served concurrently, and fined $50 on Count 3, $100 on Count 4, $100 on Count 5, and $50 on Count 6. See Dkt. # 22-7.

After review of the summary judgment record and the parties' briefs, the Court finds Thomas has failed to controvert the summary judgment evidence demonstrating that Turnbough's use of deadly force against Thomas was objectively reasonable. The evidence shows that, as claimed by Thomas, the incident was the result of a "[t]raffic stop gone very bad," and that Thomas sustained

serious injury as a result of Turnbough's use of force. However, viewing the uncontroverted facts from Turnbough's perspective, it is clear that Turnbough faced a rapidly evolving situation, dangerous for himself as well as area residents, including Fisher and his wife. Thomas presents no evidence controverting Turnbough's evidence demonstrating that Thomas initially failed to stop his vehicle and instead attempted to elude Turnbough, that Turnbough's preliminary efforts to subdue Thomas, including Turnbough's use of mace, his yanking of Thomas's earring, and his gouging of Thomas's eye, failed, and that, even after stabbing Thomas with his knife, Thomas failed to relinquish his hold on Turnbough's service weapon. Thomas presents no evidence suggesting that Turnbough acted with an improper motive. As discussed above, the law is clear that the use of deadly force is constitutionally permissible if a reasonable officer in the defendant's position would have had probable cause to believe that "there was a threat of serious physical harm to [himself] or to others." Sevier, 60 F.3d at 699. Because Thomas continued to resist and refused to let go of Turnbough's service weapon, he placed Turnbough in fear of "imminent serious bodily injury" with a deadly weapon. Turnbough's use of deadly force to defend himself was clearly reasonable.

Under the totality of the circumstances, the Court finds that the amount of force used by Turnbough was objectively reasonable and that the summary judgment evidence on file shows that there is no genuine dispute as to any material fact. For that reason, Turnbough is entitled to judgment as a matter of law. His motion for summary judgment shall be granted.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendant Turnbough's motion for summary judgment (Dkt. # 22) is **granted**.

2. This is a final order terminating this action.

3. A separate judgment in favor of Defendants shall be entered in this matter.

**DATED** this 5th day of August, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE